IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**DERON MCCOY, JR.,**

    **Plaintiff,**

  v.          CASE NO. 17-3014-SAC-DJW

**KANSAS DEPARTMENT OF
CORRECTIONS, et al.,**

    **Defendants.**

## MEMORANDUM AND ORDER

  Plaintiff, a state prisoner appearing pro se and in forma pauperis, filed this civil rights complaint pursuant to 42 U.S.C. § 1983. Mr. McCoy alleges that his First and Fourteenth Amendment rights were violated when telephone calls he made to his attorneys were recorded over a five (5) month period. He further alleges a violation of his constitutional rights resulting from a four (4) day delay in receiving mail from his attorneys.

**I. Statutory Screening of Prisoner Complaints**

  The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of such entity to determine whether summary

1

dismissal is appropriate. 28 U.S.C. § 1915A(a). Additionally, with any litigant, such as Plaintiff, who is proceeding in forma pauperis, the Court has a duty to screen the complaint to determine its sufficiency. 28 U.S.C. § 1915(e)(2). Upon completion of this screening, the Court must dismiss any claim that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b); 28 U.S.C. § 1915(e)(2)(B).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988)(citations omitted).

To survive the required screening, the plaintiff must plead enough facts "to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). In applying the *Twombly* standard, the Court must assume the truth of all well-pleaded factual allegations in the complaint and construe them in the light most favorable to the plaintiff. *See Leverington v. City of Colo. Springs,* 643 F.3d 719, 723 (10th Cir. 2011). While a pro se plaintiff's complaint must be liberally construed, *Erickson v. Pardus*, 551 U.S. 89, 94

(2007), pro se status does not relieve the plaintiff of "the burden of alleging sufficient facts on which a recognized legal claim could be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

**II. Complaint**

Plaintiff claims the violation of his constitutional rights resulting from two allegedly wrongful occurrences. First, Plaintiff alleges that phone calls with one of his attorneys were recorded starting in March, 2016, while he was housed at Lansing Correctional Facility ("LCF") and continuing after his transfer to El Dorado Correctional Facility ("EDCF"). According to Plaintiff, he provided his Unit Team Counselor at LCF, S. Peavler, with the necessary documentation to get two telephone numbers approved as belonging to his attorneys. One was the main number for the law firm, and the other was the direct dial number for one of Plaintiff's four attorneys at that firm. Defendant Peavler processed the numbers while Plaintiff was in her office.

Plaintiff did not need to call his attorneys until after he was transferred to EDCF in June, 2016. Upon making calls, he began to notice that when he called the main number, a recording stated that the call was privileged and would not be recorded, but when he called the direct number for Attorney Alexandra Pratt, a recording stated that the call would be recorded.

On or about November 1, 2016, Plaintiff submitted an inmate request form to Unit Team Counselor K. Schidler requesting that the calls to Attorney Pratt no longer be recorded and that the recordings of his calls with Ms. Pratt be deleted from the telephone data storage. Plaintiff received a response from Defendant Schidler stating that "it had been taken care of." Mr. McCoy then called Ms. Pratt to verify that the problem had been fixed, but the recording still said that the call would be recorded.

On November 18, 2016, Plaintiff submitted a grievance. On or about November 20, Unit Team Member R. Randolph asked to see documentation that Ms. Pratt was Plaintiff's attorney of record. UTM Randolph said that Plaintiff had not previously provided the documentation and that was why the calls with Ms. Pratt had been recorded. Mr. McCoy gave UTM Randolph the documentation while telling him that he had already given it to Defendant Peavler. UTM Randolph contacted Defendant Century Link, and the recording apparently stopped as of November 21, 2016. However, Plaintiff has not received any assurance that the previously recorded privileged calls have been deleted.

In Count II of the complaint, Plaintiff states that his attorneys sent him documents by Federal Express marked "Attorney Client Communications," which were received at EDCF on November 14, 2016. The Fed Ex shipment was not given to Plaintiff until

November 18, 2016. When Plaintiff asked Defendant Schidler about the delay, he said the shipment had "just got here."

In response to a grievance, Defendant Sapien stated that all Fed Ex shipments are received at the EDCF warehouse and only delivered to the property area for subsequent distribution on Fridays. In Plaintiff's case, his Fed Ex parcel was received at the warehouse on Monday, November 14, and delivered to him on Friday, November 18. The grievance response recommends that Plaintiff inform his attorneys to send items by regular U.S. Mail to avoid delay.

**III. Discussion**

After reviewing Plaintiff's complaint with the standards set out above in mind, the Court finds that certain claims and defendants should be dismissed from this action. The Court further finds that it cannot properly complete the screening of Plaintiff's complaint without additional information.

**A. Interference with Legal Mail**

Plaintiff's claim for unconstitutional interference with his legal mail should be dismissed for failure to state a claim on which relief can be granted. "To state a claim for violation of the constitutional right to access the courts, a prisoner 'must demonstrate actual injury ... — that is, that the prisoner was frustrated or impeded in his efforts to pursue a nonfrivolous legal claim concerning his conviction or his

5

conditions of confinement.'" *Burnett v. Jones*, 437 F. App'x 736, 744 (10th Cir. 2011), quoting *Gee v. Pacheco,* 627 F.3d 1178, 1191 (10th Cir. 2010). In *Burnett*, the plaintiff alleged that on one occasion his incoming legal mail was delayed for two-and-a-half days for no valid reason. *Burnett*, 437 F. App'x at 744. The court found that because the plaintiff had not alleged any resulting injury, he had not stated an actionable claim. *Id.* Likewise, Mr. McCoy does not allege that Defendants' actions or procedures impeded his ability to pursue a nonfrivolous legal claim. A four day delay in receiving his legal mail without any actual prejudice does not rise to the level of a constitutional violation. Since Defendants Sapien and Dorsey are named only in conjunction with this claim, they should be dismissed from this action.

**B. Recording of Attorney Calls**

The Court further finds that Plaintiff's claim related to the recording of some of his attorney-client phone calls also fails to state a claim under § 1983. It is true that "[a]ttorney-client communications have a special status in our legal system." *Swidler & Berlin v. United States,* 524 U.S. 399, 403 (1998). However, the attorney-client privilege is merely a rule of evidence; the Tenth Circuit has said that it has not yet been found to be a constitutional right. *Howell v. Trammell*, 728 F.3d 1202, 1222 (10th Cir. 2013). As a result, to state a

6

claim under § 1983, Plaintiff must show more than an interference with communication with his attorney. He must show that one of his established constitutional rights has been violated by that interference.

Mr. McCoy alleges his First Amendment rights were violated by the recording. As stated above, a plaintiff claiming the violation of his right of access to the courts under the First Amendment must show actual prejudice to his ability to pursue a nonfrivolous legal action. *See Gee,* 627 F.3d at 1191. While there is an argument that prejudice may be established in some instances by the "chilling effect" of the violation itself (*see Muhammad v. Pitcher,* 35 F.3d 1081, 1084 (6th Cir. 1994)), Plaintiff's allegations do not support such a finding here. Mr. McCoy was not completely deprived of the ability to speak to his attorney freely and openly without being monitored or recorded. As he acknowledges in his complaint, Plaintiff had an alternative means of speaking with Ms. Pratt that was confidential: all he had to do was call the firm's main number and ask to speak with her. His calls to the firm's main number were not recorded. Plaintiff's allegations do not demonstrate a violation of his First Amendment rights. *Cf. Andersen v. Cty. of Becker*, No. CIV 08-5687 ADM RLE, 2009 WL 3164769, at *10 (D. Minn. Sept. 28, 2009) (finding the ability to freely and openly communicate with attorney through the mail or in person results

7

in no First Amendment violation where phone calls to attorney were recorded).

Mr. McCoy also claims his Fourteenth Amendment rights were violated by the recording of his calls to Attorney Pratt. While he does not specify, presumably he is claiming a due process violation. The Due Process Clause of the Fourteenth Amendment provides that no state shall deprive any person of life, liberty, or property, without due process of law. *Estate of DiMarco v. Wyoming Dept. of Corrections,* 473 F.3d 1334, 1339 (10th Cir. 2007). "The Supreme Court's interpretation of this clause explicates that the amendment provides two different kinds of constitutional protection: procedural due process and substantive due process." *McKinney v. Pate,* 20 F.3d 1550, 1555 (11th Cir. 1994). "In its substantive mode, the Fourteenth Amendment provides protection against arbitrary and oppressive government action, even when taken to further a legitimate governmental objective." *Seegmiller v. LaVerkin City,* 528 F.3d 762, 767 (10th Cir. 2008). One strand of the substantive due process doctrine "protects an individual's fundamental liberty interest, while the other protects against the exercise of governmental power that shocks the conscience." *Id.*

> Conduct that shocks the . . . conscience ... is deliberate government action that is arbitrary and unrestrained by the established principles of private right and distributive justice. This strand of substantive due process is concerned with preventing

> government officials from abusing their power, or employing it as an instrument of oppression. Not all government conduct is covered however, as only the most egregious official conduct can be said to be arbitrary in the constitutional sense.

*Id.* (internal citations omitted).

Plaintiff does not allege that the intrusion into the attorney-client relationship here was deliberate. On the contrary, it appears the recordings occurred as a result of an error in entering Attorney Pratt's direct dial number. Mr. McCoy's allegations do not show the kind of intentional, egregious government action that shocks the conscience that is required to state a claim for violation of substantive due process rights.

Further, when a prison clearly informs an inmate that a phone call will be recorded, the subsequent use of the phone by that inmate implies consent to the call being monitored. *See United States v. Gotti,* 42 F. Supp. 2d 252, 284 (S.D.N.Y. 1999). Mr. McCoy was notified at the beginning of each call to Attorney Pratt's direct dial line that the call was being recorded. This consent abrogates any possible claim Plaintiff might make of unreasonable search or seizure under the Fourth Amendment.

In *United States v. Novak,* 531 F.3d 99, 101 (1st Cir. 2008), Justice O'Connor, sitting by designation, addressed a situation in which jail staff monitored attorney-client phone calls and then used that information against the defendant. The

9

defendant argued that the monitoring violated the Fourth Amendment and therefore the evidence should be suppressed. *Id.* Justice O'Connor wrote that the court was troubled by the monitoring and use of attorney-client phone calls but found no Fourth Amendment violation because the defendant consented to the monitoring. *Id.* at 102. The court based its finding of consent in part on an automated message played at the beginning of every call warning the prisoner that the call is subject to monitoring and recording. *Id.* at 100. As in this case, there was a process through which a prisoner could have an attorney number exempted, but because of a mechanical error, the plaintiff's calls to his attorney were mistakenly monitored. *Id.* The First Circuit recognized that the defendant may have a protected interest in the privacy of attorney-client phone calls, but such an interest does not exist when one party consents to monitoring. *Id.* at 103.

Mr. McCoy also does not state a claim under the Sixth Amendment. The Sixth Amendment guarantees a criminal defendant the right to the assistance of counsel for his defense. U.S. Const. Amend. VI. The recording, or even monitoring, of a prisoner's phone calls with his defense counsel does not necessarily violate the Sixth Amendment. *Fleury v. Collins*, No. 10-CV-01361-LTB-KLM, 2011 WL 1706835, at *4 (D. Colo. Apr. 14, 2011), citing *Mann v. Reynolds,* 46 F.3d 1055, 1060 (10th Cir.

10

1995) ("[T]he Sixth Amendment does not require in all instances full and unfettered contact between an inmate and counsel."). Without "at least a realistic possibility of injury to [the defendant] or benefit to the State, there can be no Sixth Amendment violation." *Weatherford v. Bursey* 429 U.S. 545, 558 (1977). *See also Rodriguez v. Zavaras,* 42 F.Supp.2d 1059, 1086 (D. Colo. 1999) ("[T]he clear weight of authority, including *Weatherford,* holds that a showing of prejudice is required in order to prevail on a claim under the Sixth Amendment for state interference with counsel, so long as the petitioner has not shown an improper motive by law enforcement officials."). "[T]o establish a Sixth Amendment violation by defendants' alleged monitoring of his telephone calls to his attorney, plaintiff must show that monitoring prejudiced his defense of the criminal charges against him." *Horacek v. Seaman,* No. 08-10866, 2009 WL 2928546, at *10 (E.D. Mich. Sept. 10, 2009) (unreported decision).

Mr. McCoy does not contend that the recorded calls he made to Attorney Pratt were even monitored, let alone that there was some harm to his defense or benefit to the prosecution from the recorded calls. Plaintiff's allegations state no plausible possibility that he was injured by the recordings and thus no claim for violation of his Sixth Amendment rights.

Plaintiff has failed to state an actionable claim that his constitutional rights have been violated by the recording of his calls with Attorney Pratt. Consequently, this claim should be dismissed. Since the only allegations about Defendant Peavler relate to this claim, she should be dismissed from this action.

**C. Failure to Destroy Recordings**

While Plaintiff does not state a claim under § 1983 for the initial recording of the calls, the Court finds that Plaintiff's claim that the recordings of his calls with Attorney Pratt have not been destroyed is more problematic. Once Defendants were put on notice that they had recorded privileged conversations, they should have destroyed those recordings. Based on the limited information to which Plaintiff has access and included in his complaint, it appears this has not occurred. Therefore, the Court finds that the proper processing of Plaintiff's claim related to the failure to destroy the improperly recorded calls cannot be achieved without additional information from appropriate officials of the Lansing and El Dorado Correctional Facilities. *See Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978). Accordingly, the Court orders the appropriate officials of LCF and EDCF to prepare and file a *Martinez* report. Once the report and Defendants' answers have been received, the Court can properly screen this claim under 28 U.S.C. § 1915.

**D. Improper Defendants**

The Kansas Department of Corrections ("KDOC") is not a proper party as it is a state agency entitled to Eleventh Amendment immunity and is not a "person" subject to suit under § 1983. *See Blackburn v. Dep't of Corr.*, 172 F.3d 62, *1 (Table) (10th Cir. 1999) (unpublished); *citing Buchwald v. University of New Mexico School of Medicine,* 159 F.3d 487, 494 n. 3 (10th Cir. 1998); and *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 70-71 (1989). As a result, KDOC should be dismissed from this action. However, it is an interested party for the purpose of preparing the *Martinez* report ordered herein.

In addition, upon the record before the Court, it appears Century Link is also not a proper party. Section 1983 applies only to the violation of civil rights by state actors. *See Rendell-Baker v. Kohn*, 457 U.S. 830, 837-838 (1982). Century Link is a private entity. While a private entity may become a state actor in certain circumstances, for instance where the private entity is providing a traditionally public function, courts have generally found that prison phone providers are not state actors. *See Belton v. SecurusTech.net*, No. 13-CV-4850, 2014 WL 524470, at *6 (E.D.N.Y. Feb. 7, 2014) (collecting cases). "The provision of a phone service with contractually required recording capabilities to a government facility is not a 'traditionally or exclusive public function.'" *Hernandez v.*

13

*Securus Technologies, Inc.*, No. CV 16-12402-RGS, 2017 WL 826915, at *3 (D. Mass. Mar. 2, 2017), citing *Evans v. Skolnik*, 2009 WL 3763041, at *4-5, *5 n.4 (D. Nev. Nov. 5, 2009), *aff'd*, 637 F. App'x 285, 287 (9th Cir. 2015). Plaintiff pleads no facts that establish Century Link as a state actor for purposes of § 1983. Therefore, Century Link should be dismissed from this action.

**IV. Motion for Issuance of Summons**

Plaintiff has also filed a Motion for Issuance of Summons and Waiver of Service upon Defendants (Doc. #9). Given the Court's order below dismissing several defendants and ordering the issuance of waiver of service forms to the remaining defendants, Plaintiff's motion is denied as moot.

**V. Summary**

For the reasons stated herein, Count II of the complaint alleging a violation of Plaintiff's right of access to the courts resulting from the delay in receiving legal mail should be dismissed for failure to state a claim. In addition, Plaintiff's claim that his constitutional rights were violated by the recording of certain calls to his attorney should also be dismissed for failure to state a claim. However, the Court needs additional information to screen Plaintiff's claim that the failure to destroy the recordings of privileged calls to his attorney violates his constitutional rights. Finally,

Defendants Sapien, Dorsey, Peavler, KDOC, and Century Link should be dismissed from this action.

**IT IS THEREFORE ORDERED:**

(1) Count II of Plaintiff's complaint is dismissed for failure to state a claim upon which relief can be granted.

(2) Plaintiff's claim that his constitutional rights were violated by the recording of certain calls to his attorney is dismissed for failure to state a claim upon which relief can be granted.

(3) Defendants Sapien, Dorsey, Peavler, Kansas Department of Corrections, and Century Link are dismissed from this action.

(4) The Clerk of the Court shall prepare waiver of service forms for the remaining defendants, pursuant to Rule 4(d) of the Federal Rules of Civil Procedure, to be served at no cost to Plaintiff absent a finding by the Court that Plaintiff is able to pay such costs.

(5) The *Martinez* report required herein shall be filed no later than thirty (30) days from the date of this order, and Defendants' answers shall be filed within twenty (20) days following receipt of that report by counsel for Defendants or as set forth in the waiver of service, whichever is later.

(6) Officials responsible for the operation of the Lansing Correctional Facility and El Dorado Correctional Facility are

directed to undertake a review of the subject matter of the complaint:

    a. To ascertain the facts and circumstances;

    b. To consider whether any action can and should be taken by the institution to resolve the subject matter of the complaint; and

    c. To determine whether other like complaints, whether pending in this Court or elsewhere, are related to this complaint and should be considered together.

(7) Upon completion of the review, a written report shall be compiled which shall be attached to and filed with the defendants' answers or responses to the complaint. Statements of all witnesses shall be in affidavit form. Copies of pertinent rules, regulations, official documents, and, wherever appropriate, the reports of medical or psychiatric examinations shall be included in the written report. Any recordings of the incident underlying Plaintiff's claims shall also be included.

(8) Authorization is granted to the officials of the Lansing Correctional Facility and El Dorado Correctional Facility to interview all witnesses having knowledge of the facts, including the plaintiff.

(9) No answer or motion addressed to the complaint shall be filed until the *Martinez* report required herein has been prepared.

(10) Discovery by Plaintiff shall not commence until Plaintiff has received and reviewed Defendants' answers or responses to the complaint and the report ordered herein. This action is exempted from the requirements imposed under Fed. R. Civ. P. 26(a) and 26(f).

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter the Kansas Department of Corrections as an interested party on the docket for the limited purpose of preparing the Martinez report ordered herein. Upon the filing of the report, KDOC may move for termination from this action.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Issuance of Summons and Waiver of Service upon Defendants (Doc. #9) is denied as moot given the remainder of this Order.

Copies of this order shall be transmitted to Plaintiff, to Defendants, and to the Attorney General for the State of Kansas.

**IT IS SO ORDERED.**

DATED: This 11th day of August, 2017, at Topeka, Kansas.

**s/ Sam A. Crow**
**SAM A. CROW**
**U.S. Senior District Judge**
